IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL SUCH, )<br>)<br>    Plaintiff )<br>)<br>vs. )<br>)<br>MARDIANN HUNSBERGER VINCENT; )<br>JEFFREY BEARD; JAWAD SALAMEH, M.D.; )<br>ANNETTE KOWALEWSKI; WILBERT )<br>BJORKLAND; J. YOUNG, LPN; SUZANNE )<br>SMITH, LPN; L. ROMESBURGH, LPN; )<br>COMMONWEALTH OF PENNSYLVANIA, )<br>DEPARTMENT OF CORRECTIONS; )<br>SCI-LAUREL HIGHLANDS; and PRISON )<br>HEALTH SERVICES, INC., )<br>)<br>    Defendants ) | Civil Action No. 06-85J<br>Judge Kim R. Gibson<br>Magistrate Judge Amy Reynolds Hay |

REPORT AND RECOMMENDATION

RECOMMENDATION

    It is respectfully recommended that the Contractor Defendants' Motion to Dismiss be granted in part and denied in part. The Contractor Defendants' motion to dismiss should be granted as to the Ninth Amendment claims and any substantive due process claims but denied in all other respects. It is respectfully recommended that the Department of Corrections ("DOC") Defendants' Motion to Dismiss be granted in part and denied in part. It should be granted as to the Ninth Amendment claims, as to any substantive due process claims; further it should be granted as to Count I against DOC, SCI-Laurel Highlands and any official capacity suits against the individual DOC defendants; it should be granted as to all DOC defendants as to all state law claims except for the three DOC nurse Defendants, Young, Smith and Romesburgh. It should be denied in all other respects.

REPORT

    Miguel Such, ("Plaintiff"), a state prisoner, represented by privately retained counsel, has sued eleven defendants, all of whom were somehow involved in the Plaintiff's treatment while housed at SCI-Laurel Highlands. Plaintiff is paralyzed from the waist down. Consequently, he needs to use a catheter in order to urinate. In two prior DOC institutions, Plaintiff was provided with an unlimited number of catheters and a single cell so as to be able to freely self-catheterize in private. Plaintiff complains that after arriving at SCI-Laurel Highlands, Dr. Jawad Salameh ordered that Plaintiff not be permitted to self-catheterize but, instead, be made to come to the prison health clinic in order for him to catheterize in the presence of a nurse and that Plaintiff be permitted to do so only every six hours, which was eventually changed to every four hours.

    The complaint contains eight counts. Count I alleges a Section 1983 cause of action against all the Defendants for violating Plaintiff's Eighth Amendment rights to be free of cruel and unusual punishment. Count II alleges a Section 1983 violation of his rights to equal protection. Count III alleges that there was a policy, practice or custom which caused the violation of his constitutional rights. Count IV alleges a violation of the Americans with Disability Act ("ADA"). Count V alleges a Section 1983 violation of his federal constitutional right to privacy. Count VI alleges a violation of his state tort-law right to privacy.[1] Count VII is a state law claim of civil conspiracy. Count VIII is a state law claim of intentional infliction of emotional distress.

    **A.**    **Relevant Procedural History**

    The complaint named eleven defendants. One of those Defendants is Dr. Jawad Salameh, who is a medical doctor and identified in the complaint as the Medical Director of SCI-Laurel

---

[1] Although not clear from the complaint, Plaintiff makes clear in his brief in opposition to the motion to dismiss that his state law claim for violating his right to privacy is based on Pennsylvania state tort law. Doc. 24 at 10-12.

2

Highlands.  Dr. Salameh is apparently not an employee of the DOC but is an independent contractor.  A second named defendant is Prison Health Care Services, Inc. (hereinafter "PHS"), a corporation with which the DOC contracted to provide medical services to prisoners within DOC's custody.  Dr. Salameh and PHS will be referred to collectively as "Contractor Defendants."  The remaining Defendants are: the Department of Corrections; SCI-Laurel Highlands; Jeffrey Beard, the DOC secretary; Mardiann Vincent, the Superintendent of SCI-Laurel Highlands; and the remaining five defendants all being employed in some capacity at SCI-Laurel Highlands.  Collectively, these nine defendants will be referred to as the "DOC Defendants."  Presently before the Court for disposition are motions to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) by the Contractor Defendants (Doc. 17) and the DOC Defendants (Doc. 18).

  B. **Standard of Review - Motion to Dismiss**

Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  Estelle v. Gamble, 429 U.S. 97 (1976).

  C. **The Complaint's Factual Allegations**

The complaint alleges that Defendants Beard and Vincent entered into an HMO-type agreement with PHS for providing medical services to the prisoners where PHS is provided a per capita fee, i.e., a fee per prisoner to provide services regardless of the amount of services needed

and/or utilized by each prisoner.  Plaintiff alleges that this provided incentives for PHS and Dr. Salameh to reduce costs by denying Plaintiff unlimited numbers of catheters, limiting him, initially to a catheter every six hours and then every four hours, which in effect limited him to urinating every six, and then, every four hours.  He alleges that the three DOC nurses, Defendants Young, Smith and Romesburgh, conspired with Dr. Salameh to accomplish this denial of catheters  and to encourage Plaintiff to undergo a surgical procedure to implant a semi permanent Foley catheter, and further that they denied him catheters when he requested them at times other than the six and four hour intervals. He alleges that Defendants Bjorkland and Kowalewski violated his rights by denying his grievances that complained of such treatment regarding the catheterization.

    **D.**    **Discussion**

        1.    Contractors' Motion to Dismiss

Contractor Defendants first argue that the statute of limitations bars any claims prior to April 12, 2004.  Plaintiff points out that if there were continuing tortious conduct the statute of limitations may not be a bar, citing to, *inter alia*, Linker v. Custom-Bilt Machinery, Inc., 594 F.Supp. 894, 903 (E.D. Pa. 1984)("The statute of limitations defense may be raised by a motion to dismiss only if it appears from the face of the pleadings that the cause of action has not been commenced within the limitations period.  Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).  In Bethel, the Third Circuit held that a motion to dismiss on the basis that the claim was time-barred could not be granted when the pleading alleged that the wrongful conduct that was the subject matter of the claim [was continuing conduct]".  Id. at 1174.").  Because there is a set of facts which are consistent with the allegations of the complaint and under which the statute of limitations would not be a bar, i.e., continuing tortious conduct, the claims before April 12, 2004 should not be dismissed.

Next, the Contractor Defendants argue that to the extent that Plaintiff is claiming entitlement to a single cell so that he would not have to perform the self catheterization in the presence of others, his complaint fails to state a claim for violation of his right to privacy. The Court will assume the Contractor Defendants intend by this to mean both Plaintiff's federal constitutional privacy claim and his state tort law privacy claim. The first argument is that Plaintiff failed to allege that the Contractor Defendants had any authority over his celling assignment. However, under the notice pleading standards, he need not have made such an allegation. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)(*quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957)). This fact is more ascertainable in discovery and hence the question of control is more appropriate for summary judgment.

The Contractor Defendants' next argument is that as a matter of law, Plaintiff cannot be entitled to a single cell, citing Rhodes v. Chapman, 452 U.S. 337, 348 (1981). Under the facts of Rhodes, which was in the posture of an appeal from an injunction after a hearing, and hence an evidentiary record was made, it was held that there was no constitutional violation to double celling a prisoner. However, Rhodes did not hold that under no facts or circumstances could it be a violation of a prisoner's constitutional rights to deny him a single cell. See Nami v. Fauver, 82 F.3d 63, 66-67 (3d Cir. 1996), wherein the court declared that

> While Rhodes may stand for the proposition that double celling does not per se amount to an Eighth Amendment violation, it does not stand for the proposition that double celling can never amount to an Eighth Amendment violation. The Supreme Court held only that, under the circumstances of that particular case, the double celling in question did not violate the plaintiffs' Eighth Amendment rights. ... In other words, it is implicit in Rhodes that double celling can amount to an Eighth Amendment violation if combined with other adverse conditions. Thus, in Tillery v. Owens, 907 F.2d 418 (3d Cir. 1990), we noted that, to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution, and we held that double celling at SCI Pittsburgh violated the Eighth Amendment because of those conditions. Id. at 426-427.

Instantly, Plaintiff's need to catheterize could, under the totality of the circumstances, require a private cell; at least we cannot conclude as a matter of law such a claim fails to state a claim upon which relief can be granted.

Next, the Contractor Defendants argue that Plaintiff fails to state a claim against them because Plaintiff does not have any privacy rights to self catheterize without being observed by a female nurse. The Contractor Defendants cite a number of cases, none of which are directly on point. Even those cases to which the Contractor Defendants cite support the proposition that the right to privacy, albeit limited, continues to exist even for prisoners, after incarceration. See, e.g., Robbins v. South, 595 F.Supp. 785, 790 (D. Mont. 1984) ("Plaintiff maintains that the fact a female staff member occasionally passes by his cell while dispensing medications deprives him of his privacy. Plaintiff does not allege that he is under constant, or even frequent, surveillance by female staff members. The court finds this intrusion is minor, and consistent with the **limited privacy rights retained** by a state prisoner.") (emphasis added). Indeed, the case of Cumbrey v. Meachum, 684 F.2d 712, 714 (10th Cir. 1982) observed that "[o]ther courts have held that if guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities, or showering, the inmates' constitutional rights to privacy are being violated." Of course, Cumbrey spoke in terms of guards and not nurses observing/conducting a medical procedure, as is involved here. Moreover, outside the prison walls, it is not clear that a citizen who was never convicted of a crime and who found himself in a state operated hospital would have the right, contained within the so-called "right to privacy," to demand that a male nurse catheterize him as opposed to a female nurse. If a private citizen would have no such right, it is hard to imagine that a prisoner would have such a right. But cf., Bounds v. Smith, 430 U.S. 817, 824-25 (1977)("It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to

6

authenticate them, and with stamps to mail them.").[2] In light of the lack of clear legal principles cited by the Contractor Defendants, it is, in the final analysis, the standard of review for a motion to dismiss which is dispositive. The Contractor Defendants have simply failed to carry their burden to show that Plaintiff has no right to relief under any set of facts consistent with those pled in the complaint. While the Contractor Defendants do not separately analyze the state tort right of privacy claim and the federal constitutional right to privacy claim, they have not met their burden to have either claim dismissed.[3] The same reasoning applies to Plaintiff's claim regarding violating his privacy when he was required to ask for a catheter in a visiting room in the presence of visitors, the Contractor Defendants have not carried their burden to convince the court they are entitled to dismissal of this claim.

Next, the Contractor Defendants claim that Plaintiff's claims for compensatory damages based upon the alleged deprivation of a right to privacy are barred by the PLRA provision found at 42 U.S.C. § 1997e(2), which essentially bars damages for mental or emotional injury without a prior showing of physical injury. Doc. 18 at 11-12. Plaintiff contends that he did sufficiently plead physical injury in terms of increased urinary tract infections, pain from being unable to relieve his bladder as needed, and incontinence. Doc. 24 at 20. The question presented pursuant to Mitchell v. Horn, 318 F.3d 523, 534-35 (3d Cir. 2003) is whether Plaintiff has alleged more

---

[2] In some instances it would appear that the inmate has greater rights than those not incarcerated. The court is unaware of any constitutional right of an indigent non-inmate to require the state to provide him paper and pen or stamps to file lawsuits.

[3] The Contractor Defendants also raise a failure to exhaust defense regarding the Plaintiff's privacy claims. Doc. 18 at 8, n. 2. However, analysis of this issue, under these facts, would require evidentiary materials to determine the merits of the exhaustion defense. This is better left to summary judgment. Bowen v. Ryan, 2006 WL 3437287, *11 (M.D. Pa. Nov. 29, 2006)("the court [of Appeals for the Third Circuit] has found that dismissal of a plaintiff's claims for failure to exhaust on a motion to dismiss, rather than a motion for summary judgment, was improper where there was insufficient evidence without discovery to conclude that plaintiff had failed to exhaust.").

than de minimis physical injury. The Contractor Defendants have not convinced the court that the physical injuries alleged are de minimis.

Next, the Contractor Defendants claim that the Plaintiff fails to state a claim against PHS for a violation of the Americans with Disabilities Act ("ADA") because PHS does not constitute a "public entity" as is required by the ADA.[4] See 42 U.S.C. § 12131 (defining "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." Plaintiff argues that PHS is an "instrumentality of the state" given that it is providing medical care to inmates confined in DOC institutions. Doc. 24 at 22. The court agrees that under the 12(b)(6) standard, PHS could be deemed to have acted as an instrumentality or agency of DOC and hence, PHS has not shown that it is entitled to dismissal. See, e.g., Cruz ex rel. Cruz v. Pennsylvania Interscholastic Athletic Ass'n Inc., 157 F.Supp.2d 485 (E.D. Pa. 2001)(finding the Interscholastic Athletic Association a public entity). Cf. West v. Atkins, 487 U.S. 42, 50-51 (1988)(independent contractor physician acts under color of state law). At the very least, PHS has not convinced the court that it does not constitute an "instrumentality" or "agency," i.e., agent, of the DOC, which is an alter ego of the State. See also 41 Am. Jur. 2d Independent Contractors § 2 ("A party may be both an independent contractor and an agent for another.").

Next, the Contractor Defendants argue that PHS cannot be held liable for a policy, practice or custom because "[o]ther than repeating a hodgepodge of catch phrases, Plaintiff's

---

[4] The ADA provides in relevant part that:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132

Complaint does not allege any specific policy, practice or procedure of PHS to deny inmates, such as Plaintiff, needed catheters for urination nor does Plaintiff allege anywhere that any such policy ever existed." Doc. 18 at 15.  As Plaintiff points out, he alleged that PHS maintained a policy of providing incentives for its employees, including Dr. Salameh, which provided incentives for reducing the cost of medical treatment for inmates since PHS received its funding based upon a single per capita payment, regardless of the actual cost of treatment for each inmate.  At the pleading stage, this is sufficient.   However, whether subjecting prisoners to the same cost reducing incentive faced by non-prisoners who participate in HMOs violates the Eighth Amendment or the equal protection clause of the Constitution or constitutes the denial of a liberty interest remains to be established.

Next, the Contractor Defendants point out that Plaintiff can make no claim under the Ninth Amendment, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  The Court agrees and any Ninth Amendment claim must be dismissed.  See, e.g., Wohlford v. U.S. Dept. of Agriculture, 842 F.2d 1293 (Table), 1988 WL 24281, at *1 (4th Cir. 1988)("And the ninth amendment creates no constitutional rights."); Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986)("the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."); Onyiuke v. New Jersey State Supreme Court, 435 F.Supp.2d 394, 409 (D.N.J. 2006) ("Plaintiff's Ninth Amendment claim could not withstand a motion to dismiss.").

Next, the Contractor Defendants argue that Plaintiff's complaint fails to state an Eighth Amendment claim because, essentially, the Complaint shows that the provision of catheters was adequate even if Plaintiff were required to wait for a nurse to catheterize him on a set schedule and, at most, these allegations amount to negligence.  The court is unconvinced if only because

the complaint alleges that the Defendants knew that it was medically unnecessary to require these procedures and, hence, cruel and unusual punishment to not permit him to urinate as needed, as he previously could. To the extent that these allegedly medically unnecessary procedures inflicted unnecessary pain on Plaintiff, and such unnecessary procedures were ordered for purely non-medical reasons, and because such a scenario is consistent with the allegations of the complaint, the Defendants have failed to carry their burden to show entitlement to have this claim dismissed. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 67-69 (3d Cir.1993) ("if the failure to provide adequate care ... was deliberate, and motivated by non-medical factors, then [plaintiff] has a viable claim").

The Contractor Defendants argue that Plaintiff fails to state an Eighth Amendment claim with respect to Dr. Salameh's attempt to persuade Plaintiff to undergo a Foley Catheter procedure because Plaintiff refused the procedure, and so there is no injury. They also claim that Plaintiff fails to state a claim with respect to Dr. Salameh's ordering of Bactrim, which was less effective and less costly, in place of Cipro, a more effective and more expensive drug. Plaintiff affirmatively disclaims that he is making an Eighth Amendment claim based on these two conditions. Plaintiff states that the "Plaintiff does not claim that either alone constitutes a violation of his Eighth Amendment rights. Rather, the Foley Catheter and the Cipro provide the background motivation for Dr. Salameh's unconstitutional orders." Doc. 24, p. 39. Accordingly, because Plaintiff is not making an Eighth Amendment claim based on either the recommendation of a Foley Catheter based on the provision of Bactrim rather than Cipro, they are not claims and need not be dismissed.

Next, the Contractor Defendants argue that Plaintiff fails to state a state law claim for civil conspiracy. They contend that if there is no constitutional violation there can be no civil conspiracy to effectuate a constitutional deprivation. This argument is premised upon the Court

accepting all of the Contractor Defendants' above arguments that Plaintiff fails to state a constitutional claim. Because certain of the Contractor Defendants' arguments remain, the argument for dismissal of the civil conspiracy claim must fail.

Next, the Contractor Defendants contend that Plaintiff's state law tort claim of intentional infliction of emotional distress is barred by the 2 year statute of limitations. The complaint alleges that this tort occurred from January 2, 2003 until October 15, 2003. The complaint was not filed until April 12, 2006. Plaintiff responds that the date October 15, 2003 is a typographical error and the actual date should be October 15, 200**4**. Doc. 24 at 41.[5] Given this date change, the statute of limitations argument fails.

Lastly, the Contractor Defendants argue that Plaintiff's punitive damages claim should be dismissed because the actions alleged do not rise to the level warranting punitive damages. At this stage, the court cannot so conclude. Hence, the punitive damages claim should not be dismissed.

        2.        <u>DOC Defendants' Motion to Dismiss</u>

The DOC defendants argue that Plaintiff cannot sue the DOC, SCI-Laurel Highlands or any of the real persons in their official capacities for damages. The Plaintiff concedes this point. Doc. 25 at 9-10. Hence, the Eighth Amendment claims in Count I against the real persons in their official capacities are properly dismissed, as are the claims against the DOC and SCI-Laurel Highlands.

Next, the DOC Defendants argue that the claim in Count I is based on respondeat superior liability. However, the Court finds that the complaint sufficiently alleges personal

---

[5] By separate Order, the court will require Plaintiff to file an amended complaint to correct the date. As well, the Plaintiff will be directed to correct the reference in paragraphs 53, 62, 70, 73 & 83, to paragraphs 38 and 45 for Plaintiff's "enumerated injuries" since paragraphs 38 and 45 do not contain any such information .

involvement, and to the extent that it does not sufficiently allege the personal involvement of Defendants Beard and/or Mardi Hunsberger Vincent, their personal involvement can be satisfied, as Plaintiff points out, based on their alleged promulgation of or acquiescence to policies that caused the alleged constitutional deprivation.

Next, the DOC defendants argue that because they are non-physician defendants they cannot be held liable. Their only role was to have allegedly failed to respond to Plaintiff's medical complaints, which -- they assert -- is not actionable since Plaintiff was under the care of Dr. Salameh who ordered the very thing, i.e., catheterization on a schedule in the infirmary, that deprived him of his rights. The DOC Defendants cite to Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993) in support of their argument. Plaintiff points out though that there is an exception to the Durmer rule, as stated in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). The exception as stated by Spruill, is that "a non medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference" when the prisoner is under a doctor's care, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner[.]" Id., 236. Plaintiff contends that the complaint makes such an allegation. The court agrees that at least such a set of facts is not inconsistent with the allegations of the complaint and hence Count I cannot be dismissed.[6]

---

[6] Plaintiff argues that he is not merely making an Eighth Amendment medical deliberate indifference claim but also a more general Eighth Amendment conditions of confinement claim. Doc. 25 at 12. Specifically he argues that the condition of restricting him to urinating only every six hours constituted a violation of the general Eighth Amendment standards. To the extent that this limitation was imposed by Dr. Salameh and the remaining Defendants could reasonably believe this medical order did not amount to mistreatment within the contemplation of Spruill, Plaintiff's attempt to cast this as a general Eighth Amendment conditions of confinement case in addition to a medical deliberate indifference claim gains him nothing. The subjective prong would be lacking under either the Estelle medical deliberate indifference standard or the more general conditions of confinement standard. To the extent that these Defendants could reasonably rely on Dr. Salameh's orders as being medically appropriate, no Eighth Amendment claim can be made under either Estelle or the general conditions of confinement standard.

Next, the DOC defendants contend that the Complaint fails to state an equal protection claim because Plaintiff does not aver that he is a member of a protected class or was treated differently than others similarly situated. Plaintiff's allegations state a claim as he need not be a member of a protected class to state an equal protection violation. Ward v. Temple University, 2003 WL 21281768, at *7 (E.D. Pa. Jan. 2, 2003) ("An individual does not need to be a member of a protected class in order to state a claim under the equal protection clause."). Moreover, he has sufficiently alleged that he was "discriminated against" by Dr. Salameh, when he was unnecessarily forced to urinate on a schedule based on his disability whereas non-disabled inmates were not so required to abide by a schedule. Because Plaintiff does not contend that he is a member of a protected class, the equal protection question then would become whether there was a rational basis for Dr. Salemeh's order treating Plaintiff differently from non-disabled inmates. See Doc. 25 at 23 ("The inquiry then goes to whether or not the Plaintiff [h]as pled sufficient facts regarding the lack of a rational basis for disparate treatment."). This question is best left to summary judgment.

Next, the DOC Defendants point out that in Count III of the complaint, Plaintiff attempts to make out a Fourteenth Amendment substantive due process claim. Plaintiff acknowledges that "if his claim is properly an Eighth Amendment claim, he is not entitled to relief under a claim for substantive due process." Doc. 25 at 24. The Court agrees and recommends dismissal of any substantive due process claims because Plaintiff's claims are explicitly covered under the Eighth Amendment as a matter of law and so, he does not have in addition thereto another claim for a violation of substantive due process. Albright v. Oliver, 510 U.S. 266 (1994).[7] Contrary to

---

[7] To the extent that the Contractor Defendants failed to raise this specific argument regarding Plaintiff's substantive due process claims, the court recommends dismissal of the substantive due process claim against the Contractor Defendants pursuant to the screening provisions of the PLRA addressing prison conditions litigation. 42 U.S.C. § 1997e.

Plaintiff's arguments, it is not a matter of simply pleading inconsistent theories of recovery, rather, Plaintiff simply has no claim for a substantive due process violation in addition to an Eighth Amendment challenge.  However, a policy, practice or custom such as alleged in the complaint which provides incentives to deny treatment could violate the Eighth Amendment and the allegations of the complaint in this regard are sufficient to state an Eighth Amendment claim against the Defendants named in Count III.

      Next, the DOC Defendants claim that the complaint fails to state a claim under the ADA because Plaintiff fails to aver how he was a "qualified individual with a disability."   The fact that he alleged that he is disabled is adequate for present purposes of deciding the motion to dismiss.  The DOC defendants also claim that he has failed to aver that he is being denied participation in services, programs or activities.  Plaintiff points out that he was denied, inter alia, the services of an adequate supply of catheters, the service of being able to urinate as needed, even as other prisoners are supplied with the service of being able to urinate as needed.  Alternatively, Plaintiff argues that he was discriminated against on the basis of his disability.  Under either scenario of being denied services or being discriminated against, the complaint is sufficient at this stage to state a claim under the ADA.

      Next, the DOC defendants argue that Plaintiff fails to state a right to privacy claim under the First or Ninth Amendment.  As noted earlier, Plaintiff fails to state a claim under the Ninth Amendment.  However, it is clear that the United States Constitution provides a right to privacy, even if the constitutional textual source of the right is unclear.  <u>See</u>, <u>e.g.</u>, <u>DeMasi v. Weiss</u>, 669 F.2d 114, 120 (3d Cir.1982) ("The right to privacy under the Constitution has not been fully measured; the concept instead has developed on a case by case basis, finding its sources in implicit notions behind the **first**, fourth, fifth, ninth, and fourteenth amendments to the

Constitution and the fundamental concept of liberty")(emphasis added).[8]  Hence, Count V's claim of a right to privacy will not be dismissed.

Next, the DOC Defendants claim that because the complaint fails to state any federal constitutional claim, the court lacks jurisdiction over the pendent state law claims.  This argument rests on the court accepting all of the earlier arguments of the DOC defendants.  As the court did not accept all of those arguments, this argument as to the state law claims also fails.

Next, the DOC defendants claim that they are entitled to sovereign immunity from suit with respect to Count VI (state tort privacy claim), Count VII (state tort conspiracy claim) and Count VIII (intentional infliction of emotional distress).   However, Plaintiff points out that some of the claims/defendants come within an exception to the sovereign immunity statute, 42 Pa.C.S.A. § 8522(b)(2), which provides as an exception to the sovereign immunity defense the following: "Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel."  Plaintiff claims that the three nurse defendants, i.e., Young Smith and Romesburgh, can be held liable for all three counts because their liability for all three counts is based upon their provision of medical care or lack thereof to Plaintiff.  The Court agrees and Counts VI, VII and VIII should be dismissed against all of the DOC defendants except Nurses Young, Smith, and Romesburgh because they are entitled to sovereign immunity.[9]

---

[8] While the quote from DeMasi notes that some courts have mentioned the Ninth Amendment as a potential source of the right to privacy, this court finds that the plain language of the Ninth Amendment does not affirmatively provide a source of rights and finds those cases holding that the Ninth Amendment creates no constitutional rights to be persuasive, as previously discussed.

[9] Dr. Salameh also remains a defendant in these three counts as the sovereign immunity defense was not raised by him nor, given the doctor exception, would it be applicable, even if the court assumed he constituted a "Commonwealth party" within the contemplation of Section 8522(b)(2).

CONCLUSION

        In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

        Respectfully submitted,

        /s/ *Amy Reynolds Hay*
        AMY REYNOLDS HAY
        United States Magistrate Judge

Dated:  6 February, 2007

cc:    Hon. Kim R. Gibson
       United States District Judge

       All counsel of record via Notice of Electronic Filing